FILED
COURT OF APPEALS
DIVISION II

2013 FEB 26 AM 10: 22

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42511-4-II |
| Respondent, | |
| v. | |
| MARTHA GARCIA VASQUEZ, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Martha Garcia Vasquez appeals her convictions of unlawful possession of a controlled substance—methamphetamine, with intent to deliver (with a school bus route stop enhancement) and unlawful use of a building for drug purposes. She challenges the sufficiency of the evidence supporting her convictions, as well as the school bus route stop enhancement. We affirm.

## FACTS

In late February, early March 2011, the Thurston County Narcotics Task Force began investigating Rogelio Pech Canche and Virginia Santos Jimenez for possible money laundering and illegal drug distribution. The investigation disclosed that Jimenez owned two homes in Thurston County. One at 949 Garfield Avenue in Tenino and another at 8530 Steilacoom Road Southeast, mobile home space 88, in Lacey. Canche and Jimenez lived at the home in Tenino with their two children. Vasquez and Leobardo Santos Pioquinto lived at the Lacey home.

Using a confidential informant, the task force purchased methamphetamine on three separate occasions from Canche. During each buy, Canche used a different vehicle. During an

1

attempted buy, Canche's vehicle broke down and Pioquinto picked him up and gave him a ride home in Vasquez's car. Officers observed all of Canche's vehicles at the Lacey home at various times during the investigation.

On April 26, 2011, the task force simultaneously executed two search warrants. One team searched the Tenino home and another team searched the Lacey home.

During the Tenino home search, officers recovered a photograph hanging in the living room depicting Canche, Jimenez, their children, Vasquez, and Pioquinto.[1] They also recovered $60,000 in cash and 1,829 grams of methamphetamine with a street value of $155,000.

When the officers served the warrant at the Lacey home, Vasquez was in the master bedroom of the two bedroom mobile home. From the top dresser drawer in the master bedroom, they recovered $8,662 in cash, a small bag of methamphetamine, and two recent Comcast bills bearing Vasquez's name. From the master bedroom closet, which contained women's clothing, they recovered a digital scale, three notebooks that appeared to be narcotic trafficking ledgers, six cell phones, $772 from a purse, $150 from one wallet, and $140 from another wallet.

The officers also recovered 281 grams of methamphetamine with a street value of $24,000, most of which came from the locked second bedroom.[2] And they seized a photograph identical to that found in the Tenino home depicting Canche, Jimenez, their children, Vasquez, and Pioquinto. The officers also recovered Vasquez's Mexican and Washington driver's

---

[1] The officers also photographed a shrine with an image of Jesus Malverde, "the patron saint of drug dealers." Report of Proceedings (RP) at 62.

[2] They recovered two bags of methamphetamine from a jewelry box in the master bedroom closet and one small bag from the top dresser drawer.

licenses.[3] They seized receipts for money transfers of $190, $6,090, and $510 made by Vasquez to Guadalupe Santos Bautista[4] in Mexico in a two-day period and three W-2 forms for Vazquez showing that she earned less than $3,000 in income for 2009 and less than $4,000 in 2010.

The State charged Vasquez with unlawful possession of methamphetamine with intent to deliver (within 1,000 feet of a school bus route stop) and with using a building for drug purposes. Witnesses testified as stated above. Additionally, Eric Weight, the transportation director for North Thurston Public School District, testified at trial that five school bus route stops service the trailer park: "There's actually three special education bus stops in the mobile home park, there's one regular bus stop in the mobile home park, and there's one just outside on Steilacoom Boulevard [sic] outside the mobile home park." Report of Proceedings (RP) at 278. He testified that he measured the distance between each of the five stops and trailer space 88 and each was less than 800 feet from space 88.

A jury found Vasquez guilty of the charged offenses and by special verdict that she committed them within 1,000 feet of a school bus route stop. She appeals.

---

[3] The record does not indicate which state issued the driver's license but because it bore a Washington address, we assume it was a Washington State driver's license. Exhibits 37-40, photographs of the wallets and identification, are not part of the record on appeal.

[4] This appears to be Pioquinto's father.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

1. *Standard of Review*

When facing a challenge to the sufficiency of the evidence, we ask whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Because credibility determinations are for the trier of fact and are not subject to review, *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990), we defer to the trier of fact's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

2. *The Drug Convictions*

Vasquez argues that the State failed to prove that she acted as either an accomplice or a principal in any drug transaction. She argues that there was no evidence that she helped anyone do anything. In fact, she argues, the State presented no evidence that she used or sold drugs, no evidence that she was related to anyone involved, no evidence she was connected to any of three controlled buys, no evidence of what money she used to pay for her car and pay for the money transfers to Mexico, no evidence that the clothes in the trailer belonged to her, and no evidence that she had ever been to Canche's home.

Taking the evidence in a light most favorable to the State, we conclude that sufficient evidence supported the jury's verdict. While there was no direct evidence that Vasquez participated in any particular drug transaction, there was sufficient circumstantial evidence to

support the jury's conclusion beyond a reasonable doubt that she was an accomplice to the drug activity in the Lacey home. To show that Vasquez was an accomplice, the State had to prove that, "with knowledge that it [would] promote or facilitate the commission of a crime, . . . she either: (1) solicit[ed], command[ed], encourage[ed], or request[ed] another person to commit the crime; or (2) aid[ed] or agree[ed] to aid another person in planning or committing the crime." Clerk's Papers at 31.

Here, there was evidence that Vasquez lived at the Lacey home based on the women's clothing found in the master bedroom closet, current Comcast bills bearing her name, a wallet and a purse containing her identification, and the presence and use of her car during the investigation. Second, the large quantity of drugs and amount of cash, the existence of drug ledgers, multiple cell phones, a digital scale, and documents showing that Vasquez's income was less than the amount of money she sent to Mexico, all support that she shared the profits from drug trafficking by Canche, Jimenez, and Pioquinto. Third, there was evidence showing her familial relationship with Canche and Jimenez through the photographs found at each residence, the relationship of cousin or brother between Pioquinto and Jimenez, and her transferring money to Pioquinto's father in Mexico. Finally, there was evidence that all of Canche's cars had been at the Lacey home and that Canche or Jimenez went to the Lacey home before completing the second controlled buy at the Tenino home, suggesting, according to trial testimony, that the Lacey home was a stash house.[5]

---

[5] A stash house is an off-site place for storing drugs away from where a drug dealer conducts business.

5

This was sufficient evidence to support the jury's verdict. Vasquez's claim fails.

3. *School Bus Route Stop Enhancement*

Vasquez argues that the State failed to show that the school bus route stops testified to existed on the day of the offenses. She acknowledges the testimony that five bus route stops existed within 800 feet of the Lacey home but argues that the State failed to show that these same bus route stops existed during March and April 2011.

We agree with the State that the jury could conclude from the evidence that these bus route stops existed on April 26, 2011. Vasquez's trial took place July 11-13, 2011. Weight testified that he re-measured the distances that morning before testifying. He also pointed out where each stop was on a map. Weight explained the location of the five stops in the present tense, using the clause, "We have a . . . stop here" in describing all five. RP at 280. Taking this evidence in a light most favorable to the prosecution, the jury could reasonably conclude that at least one, if not all, of these bus stops existed during the recently-ended school year.

## II. STATEMENT OF ADDITIONAL GROUNDS

In her statement of additional grounds, Vasquez claims that she has paystubs that would show how she made her money. She claims that she made an honest living, that her car was reconstructed, and that she had financial help to pay for it. Because reviewing these arguments would require us to consider matters outside the appeal record, we cannot address them. *State v. McFarland*, 127 Wn.2d 322, 338 n.5, 899 P.2d 1251 (1995).

No. 42511-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Van Deren, J.

Penoyar, J.